**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHAJIA AYOBI,<br><br>    Plaintiff,<br><br>    v.<br><br>ROMERO,<br><br>    Defendant. | Case No. 1:19-cv-00964-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING PLAINTIFF'S MOTION FOR SUMMARY BE DENIED AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF Nos. 27, 31) |

Plaintiff Shajia Ayobi is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant Romero's motion for summary judgment, filed October 15, 2020, and Plaintiff's motion for summary judgment, filed October 28, 2020.

**I.**

**RELEVANT BACKGROUND**

This action is proceeding against Defendant Romero for deliberate indifference to her serious medical needs in violation of the Eighth Amendment.

On November 7, 2019, Defendant Romero filed an answer to the complaint. (ECF No. 15.)

On December 9, 2019, the Court issued the discovery and scheduling order. (ECF No. 23.)

///

1

On October 15, 2020, Defendant Romero filed a motion for summary judgment. (ECF No. 27.)

On October 28, 2020, Plaintiff filed a motion for summary judgment. (ECF No. 31.)

Plaintiff filed an opposition to Defendant's motion for summary judgment on November 4, 2020. (ECF No. 32.) Defendant filed a reply on November 13, 2020. (ECF No. 33.)

On November 18, 2020, Defendant filed an opposition to Plaintiff's motion for summary judgment. (ECF No. 34.)

Plaintiff filed a sur-reply on December 7, 2020. (ECF No. 35.)

On December 17, 2020, Plaintiff filed a reply to Defendant's opposition. (ECF No. 36.)

## II.

## LEGAL STANDARD

**A.   Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry

of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A.   Summary of Plaintiff's Relevant Allegations

On April 27, 2015, Dr. Romero prescribed Lipitor 40 mg daily for high cholesterol in combination with Gemfibrozil, which is contraindicated. Plaintiff objected to taking Lipitor because of a television commercial indicating it causes diabetes. Dr. Romero told Plaintiff that her concerns were not true, despite knowledge of Plaintiff's family history of diabetes. Dr. Romero did not inform Plaintiff of the risks of diabetes or kidney failure due to taking Lipitor or the combination of Lipitor with Gemfibrozil.

In early May 2015, Plaintiff began to experience pain in her arms that moved to her knees, wrists, ankles, shoulders and neck.

Plaintiff was seen by Dr. Showalter who told her to stop taking Lipitor and ordered blood work to determine if Plaintiff had diabetes.

On May 11, 2015, the lab work revealed the fasting blood glucose was high and triglycerides was higher than on Gemfibrozil alone.

On June 1, 2015, a blood test revealed Plaintiff had diabetes.

Plaintiff was seen by Dr. Showalter on June 22, 2015, who informed Plaintiff that she had type 2 diabetes. Plaintiff contends she would not have diabetes if she had not been prescribed Lipitor by Dr. Romero.

///

**B.     Plaintiff's Motion for Summary Judgment**

Plaintiff's motion for summary judgment is procedurally deficient as it does not include a statement of undisputed facts properly supported by evidence as required by Rule 56(c) of the Federal Rules of Civil Procedure and Local Rule 260(a). See ECF No. 31.  Rather, Plaintiff simply sets forth various factual allegations relating to her treatment and concludes that Dr. Romero is liable. Accordingly, Plaintiff's motion for summary judgment should be denied as procedurally deficient.

**C.     Plaintiff's Sur-reply**

A party does not have the right to file a sur-reply and motions are deemed submitted when the time to reply has expired. Local Rule 230(*l*). The Court generally views motions for leave to file a sur-reply with disfavor. Hill v. England, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing Fedrick v. Mercedes–Benz USA, LLC, 366 F.Supp.2d 1190, 1197 (N.D. Ga. 2005)). However, district courts have the discretion to either permit or preclude a sur-reply. See U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable sur-reply"); JG v. Douglas County School Dist., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file sur-reply where it did not consider new evidence in reply); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond).

Although Plaintiff does not have a right to file a sur-reply, in this instance the Court will exercise its discretion and consider the sur-reply in ruling on Defendant's motion for summary judgment.

**D.     Defendant's Motion for Summary Judgment**

Defendant Dr. Romero moves for summary judgment on the ground that Plaintiff's claim is nothing more than a disagreement with her medical opinion as to the appropriate course of evaluation and treatment.

Plaintiff opposes Defendant's motion and argues that a genuine issue of material fact exists as to whether Dr. Romero was deliberately indifferent by prescribing Atorvastatin (also known as Lipitor) which she contends caused her diabetes.

4

E.  **Statement of Undisputed Facts**[1]

1.  At all relevant times, Plaintiff was incarcerated by the California Department of Corrections and Rehabilitation (CDCR) at Central California Women's Facility (CCWF). (Declaration of Romero (Romero Decl.) ¶ 4, Ex. A, ECF No. 27-3.)

2.  Plaintiff received regular treatment for a number of medical conditions, including high cholesterol and dyslipidemia, while incarcerated at CCWF. (Romero Decl. ¶ 5, Ex. A.)

3.  On April 27, 2015, Dr. Romero examined Plaintiff to address her high cholesterol, dyslipidemia, and related health concerns. Dr. Romero reviewed Plaintiff's medical history and considered various treatment options. Dr. Romero noted that Plaintiff's cholesterol and dyslipidemia were not improving. Dr. Romero concluded that Plaintiff's cholesterol levels and weight gain were placing her at an increased right for heart disease and other cardiovascular complications. Dr. Romero prescribed Atorvastatin on April 27, 2015 in order to mitigate those risks. (Romero Decl. ¶ 6, Ex. B.)

4.  Shortly after beginning to take the Atorvastatin, Plaintiff began to complain of pain in her arms. Plaintiff indicated that this pain began when she started taking atorvastatin. On May 26, 2015, another physician at CCWF, Dr. Showalter, signed an order stopping Plaintiff's prescription for atorvastatin. (Romero Decl. ¶ 10, Exs. A, B.)

5.  Dr. Showalter also noted that Plaintiff's blood sugar measurements were high on December 2, 2014 and May 11, 2015. In light of these measurements, Dr. Showalter ordered an HgA1C test which came back at a level diagnostic of diabetes. (Romero Decl. ¶ 11, Exs. A, B.)

F.  **Analysis of Defendant's Motion**

Defendant argues that Plaintiff's medical records document frequent and continuing care in response to Plaintiff's conditions.

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires

---

[1] Hereinafter referred to as "UDF."

Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," Simmons v. Navajo County, Ariz, 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096.

Negligence or medical malpractice do not rise to the level of deliberate indifference. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-106). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d at 242, overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082–83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

As an initial matter, there is no dispute and Defendant does not argue that Plaintiff's medical conditions were serious. Therefore, the only issue to decide is whether Defendant Dr. Romero was deliberately indifferent to Plaintiff's medical conditions.

It is undisputed that Dr. Romero prescribed Atorvastatin (Lipitor) on April 27, 2015. (UDF 3.) At that time, Dr. Romero was not aware of any potential link between the use of Atorvastatin and an increased risk of diabetes. (Romero Decl. ¶ 8.) Indeed, the data on the potential link between Atorvastatin and diabetes was extremely limited at the time. (Id.) Moreover, the current data suggests that the benefits of statin therapy in treating high cholesterol and dyslipidemia outweigh the potential increased risk of developing diabetes. (Id.) Furthermore, even if Plaintiff could establish that there is an association between Atorvastatin (Lipitor) and diabetes (i.e., that Lipitor increases the risk of diabetes) and that Lipitor is capable of causing diabetes, it does not necessarily follow that Lipitor caused the development of diabetes in Plaintiff, absent evidence to the contrary, not present here. In addition, Dr. Romero unequivocally states that she would continue to prescribe Atorvastatin today because the benefits outweigh the potential increased risk of diabetes. (Romero Decl. ¶ 8.)

It is undisputed that one of the other common side effects of statin therapy is muscle pain. (Romero Decl. ¶ 9.) When a patient experiences muscle pain after beginning statin therapy, the appropriate course of action is to consider the use of alternative statins. (Id.) This is exactly what happened in this case. Shortly after beginning to take the Atorvastatin, Plaintiff began to complain of pain in her arms that began when she started taking the medication. (UDF 4.) On May 26, 2015, another physician at CCWF, Dr. Showalter, signed an order stopping Plaintiff's prescription for Atorvastatin. (Id.) It appears Dr. Showalter noted that Plaintiff's blood sugar measurements were high on December 2, 2014, and May 11, 2015. (UDF 5.) Therefore, Dr. Showalter ordered an HgA1C test which came back at a level diagnostic of diabetes. (Id.) However, there is no evidence that Plaintiff's diabetes was caused by her taking Atorvastatin for one month in 2015, or that Plaintiff was previously diagnosed or treated for diabetes. In fact, on July 30, 2015, Plaintiff was restarted on statin therapy which is indicative of the importance of statin therapy in treating Plaintiff's high cholesterol and dyslipidemia. (Id. at ¶ 12.)

///

   In opposition, Plaintiff essentially argues that because she was never diagnosed with diabetes, prior research and her prior history increased her risk of contracting diabetes from Atorvastatin, and she was subsequently diagnosed with diabetes after taking Atorvastatin, Dr. Romero is liable. However, "simply because a person takes drugs and then suffers an injury does not show causation. Drawing such a conclusion from temporal relationships leads to the blunder of the *post hoc ergo propter hoc* fallacy." McClain v. Metabolife Int'l, Inc.*,* 401 F.3d 1233, 1243 (11th Cir.2005); see also Roche v. Lincoln Prop. Co., 278 F.Supp.2d 744, 752 (E.D.Va.2003) ("Dr. Bernstein's reliance on temporal causation as the determinative factor in his analysis is suspect because it is well settled that a causation opinion based solely on a temporal relationship is not derived from the scientific method and is therefore insufficient to satisfy the requirements of Rule 702.") (internal quotes omitted).

   Plaintiff submits that Dr. Romero's prescription of Atorvastatin was not merely a medical opinion because there was a "large study done on Lipitor by experts in medical and science according to that tv ad. Defendant's claim that she was not aware of the link between Lipitor and diabetes at the time is incorrect and false considering the aforementioned points plaintiff made." (ECF No. 32, Opp'n at 3.) Plaintiff's personal opinion about what happened to her and why it happened is not competent evidence sufficient to defeat Dr. Romero's motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,* 475 U.S. 574, 587 (1986). In addition, the declaration of inmate Mary Jo Meyers does not serve to create a genuine issue of material fact. In support of her arguments, Plaintiff submits, inter alia, a declaration by fellow inmate Mary Jo Meyer, who claims that prior to incarceration she was a registered nurse for 32 years. (ECF No. 32, Opp'n at Ex. E.) Ms. Meyer opines that Plaintiff became diabetic after she took a high dose of Atorvastatin. (Id.) It appears that Ms. Meyer is providing testimony regarding the purported side effects of Atorvastatin. (Id.) However, besides the declaration itself, Plaintiff fails to submit any evidence to support the contention that Ms. Meyer is qualified to provide expert medical opinion on the issue pursuant to Federal Rule of Evidence 702.

   Although Ms. Meyer declares that she was previously employed as a registered nurse, she has not been qualified as a medical expert pursuant to Federal Rule of Evidence 702. As such, Ms. Meyer's non-expert testimony is limited to statements "(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.  Therefore, she may not offer medical testimony regarding Plaintiff's medical status, diagnosis or medication side effects. She also may not provide testimony regarding causation. "[G]enerally plaintiff must prove causation by expert medical testimony except where there is an obvious causal relationship-one where injuries are immediate and direct." Walker v. Contra Costa County,  Nos. C03-3723 TEH, C05-2800 TEH, 2006 WL 3371438, at (9 (N.D. Cal. 2006), quoting In re Baycol Products Litigation, 321 F.Suapp.2d 1118, 1125 (D.Minn.2004) (citation omitted) (internal quotation omitted).

In addition, Plaintiff's submission of a medical article obtained from the UpToDate website, even if deemed admissible, is insufficient to demonstrate a genuine issue of material fact because there is simply no evidence to show that the prescription of Atorvastatin posed a risk to *her* diabetic diagnosis.[2] (ECF No. 32, Opp'n at Ex. C.)  Accordingly, Plaintiff has not met her burden of showing that Defendant Dr. Romero knew of a risk to her serious medical condition posed by Atorvastatin and was deliberately indifferent thereto via any potential heightened risk for contracting diabetes.   Even if Plaintiff had shown that the prescription of Atorvastatin posed a risk to his diabetic condition, she has failed to present any evidence that Dr. Romero acted with deliberate indifference towards her. Plaintiff has shown that she disagrees with prison officials over his prescription of Atorvastatin. However, mere differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim. See Jackson v. McIntosh, 90 F.3d at 332; Sanchez v. Vild, 891 F.2d at 242; Franklin v. Oregon, 662 F.2d 1337, 1334 (9th Cir.1981).  Thus, there is

---

[2] "[I]t is well established that medical textbooks, treatises and professional articles are not freely admissible in evidence to prove the substantive or testimonial facts stated therein, since they are subject to the hearsay rule." Hickock v. G.D. Searle & Co., 496 F.2d 444, 446 (10th Cir. 1974).  A statement from a medical textbook, treatise or professional article may be admissible if the statement is established to be from a reliable medical authority and is relied upon an expert witness. *See* Fed. R. Evid. 803(18); Tart v. McGann, 697 F.2d 75, 78 (2d Cir. 1982).  Plaintiff has not shown the article from the UpToDate website is reliable medical authority, and Plaintiff has not shown that he has any medical expertise and has not presented any expert witness who relied upon the article.

insufficient evidence from which a trier of fact could conclude either that Defendant Dr. Romero knew, based on Plaintiff's medical condition, that the prescription of Atorvastatin would pose a substantial risk of serious harm to Plaintiff, but disregarded that risk anyway. Accordingly, Defendant Dr. Romero's motion for summary judgment should be granted.

### IV.

### ORDER AND RECOMMENDATIONS

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a Fresno District Judge to this action.

Further, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment be denied as procedurally deficient;
2. Defendant's motion for summary judgment be granted; and
3. The Clerk of Court be directed to enter judgment.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 6, 2021**

UNITED STATES MAGISTRATE JUDGE